HEARD APRIL TERM, 1876.

## SANDERS vs. COUNTY COMMISSIONERS.

An action in the nature of a creditor's bill cannot be maintained against County Commissioners to subject a fund consisting of public moneys to equitable distribution among those entitled to the same.

BEFORE MAHER, J., AT COLLETON, MARCH, 1876.

This was an action by B. Sanders against the County Commissioners of Colleton County. The case is fully stated in the opinion of the Court. The defendants appealed.

*Tracy & Tracy*, for appellants.

*Henderson & Behre*, contra.

January 13, 1876. The opinion of the Court was delivered by

WILLARD, A. J. This is an action in the nature of a creditor's bill by a judgment creditor of Colleton County, in behalf of himself and other creditors of that County of a specified class, against the defendants, as County Commissioners of that County, to enjoin and restrain them from paying out or disposing of any of the funds collected, or to be collected, for the payment of the past indebtedness of said County and for the appointment of a Referee, the taking of an account of the assets in their hands and already administered, that creditors may be called in and the outstanding claims of the County be ascertained, and that they may be ordered to be paid in equitable proportions from such funds as may be applicable thereto, and for general relief.

It appears that certain special taxes have been authorized and levied for the payment of certain past indebtedness of Colleton County, under which moneys have been collected and paid to the County Treasurer, and still further payments to that fund are anticipated. It is not disputed that the plaintiff is one of the class of creditors entitled to payment out of such fund. It appears, however, that the amount to be paid is in excess of the available funds; that the defendants, as County Commissioners, have drawn orders on the County Treasurer for the payment of some of the demands of the class entitled to be paid. It is not alleged, however, that the demands so paid from the fund were not lawful demands of the class contemplated by the law authorizing the special taxes. The County Treasurer is not made a party.

The Circuit Judge, upon this state of facts, made an order of injunction, restraining the County Commissioners, which, upon the hearing on pleadings and affidavits, was continued until the final judgment. This injunction restrained the defendants, as County Commissioners, from paying out any funds collected, or to be collected, for the payment of the past indebtedness of the County. It also appointed Referees, and directed them to take "an account of the amounts received for the payment of the past indebtedness of the County of Colleton by the County Commissioners, and how and to whom the same was distributed by them; that they call in the creditors of the said County whose credits accrued prior to November, 1874, by advertisement in the Walterboro News until May 1, 1876, and that they audit the claims so presented; that they report the amount of the claims actually due, and the state of the funds in the hands of the County Treasurer of Colleton County applicable to the payment of the same, distinguishing the fiscal years in which the claims respectively accrued, and any funds specifically applicable to particular fiscal years, and in what proportions distributable among the creditors, due regard being had to the payments already made to such creditors as have heretofore received partial payments on their accounts from funds specifically appropriated for past indebtedness, in order to equalize the same with other creditors."

The only equity alleged as ground for the relief sought is that the County Commissioners have authority to draw on the County Treasurer, for the payment of claims of the class to which the plaintiff's demand belongs, against a fund in the hands of the County Treasurer specifically appropriated by law for that general purpose, but insufficient to pay all that have legal demands upon it. In order to maintain the action of the Circuit Court, it is necessary to establish two propositions: first, that the plaintiff has a right to have the fund in question ratably distributed among those entitled to it; and, second, that a Court of equitable jurisdiction is competent to make such division.

If these propositions should be established in favor of the plaintiff, and it should be made to appear as a general proposition that the plaintiff has a right to some relief, a question would arise whether he has brought the proper and necessary parties before the Court.

The plaintiff cannot succeed in the fundamental propositions just stated consistently with the recent decision of this Court in *County Commissioners* vs. *Winnsboro National Bank.* Has he a right, either at law or in equity, as a creditor, to have a fund applicable by law to the payment of his demand, consisting of public moneys in the hands of a public treasurer, ratably distributed among those entitled to it? If there is any such right existing, we know of no case that sanctions or enforces it.

In *Jacobs* vs. *Winnsboro Bank*, just referred to, the suit was by the County Commissioners and the School Commissioner against the bank, which held a special deposit belonging to the County Treasurer, for a decree placing in their hands certain portions of such funds, which they allege to be applicable by law to disbursement in these several departments of the County government. They failed to make the County Treasurer a party defendant, and, a decree of distribution was made, which we set aside. It was there held that a Court of equity could not seize and administer funds in a public treasury; that the duty of applying such funds rests upon the administrative officers and could not be transferred to the Court. That if a party had a specific right to payment out of funds appropriated by law for that purpose, the proper remedy was by *mandamus* to compel the officers chargeable with such neglect properly to perform such duties; but that the Court could not lay hold of public funds and perform itself the functions devolved by law upon administrative officers.

As between individuals there is no general equity to convert a fund for the payment of debts exclusively owned and controlled by the debtor into assets on the ground alone that the fund is insufficient to meet the demands upon it. A debtor, though insolvent, has, independent of the interference of insolvent or bankrupt laws, a clear legal and equitable right to apply his estate to the payment of his debts, with such preferences and in such order as he may judge best, and cannot be compelled to give any account of the reasons of his conduct, provided his motives be honest. If instead, however, of applying his means to the payment of his debts he conceals them so as to defeat process issued by his creditors, then there is an equity to compel him to disclose the state of his property, to restrain him from making away with such property, and to have his estate held and administered in equity as assets for the payment of his debts. This equity is the foundation of the creditor's bill,

*inter vivos,* as a feature of equitable cognizance. Such a bill was founded upon a judgment recovered at law, execution issued and returned unsatisfied, either wholly or in part, and on an allegation to that effect that the operation of the process had been defeated by the fraudulent acts of the judgment debtor, intended to cover his property from the process of his creditors.

Thus we see that, as between individuals, the only equity of the creditor to lay hold of the estate of his debtor, when there is a judgment at law, is derived from the fact that legal process against such debtor has been defeated by his fraud. He must either proceed to divest his debtor of his estate in favor of his creditors, as a class, under insolvent or bankrupt laws, or exhaust the ordinary process of the Court.

The foundation of this doctrine, as we have said, is the general right of the individual to apply his estate to the payment of his debts in such manner as he may judge best, even though insolvent. Without losing sight of the qualifications of this right already noticed, we will next inquire whether political bodies, such as the States, Counties and lesser municipal bodies, are within the reason on which this general rule rests. Such political bodies have, except as restricted by positive law, either constitutional or statutory, all the powers of individuals in regard to acquiring, holding and disposing of property. Political bodies possessing sovereign attributes have, in addition, powers and immunities in excess of those possessed by any individual citizen. It is enough, however, for our present purposes to say that whatever an individual may enjoy in respect of his property such political bodies may enjoy, unless relinquished or taken away by positive law.

Another proposition bears on the subject. Neither the Courts of law or equity have power to adjudge such political bodies insolvent. The solvency of such bodies is not dependent upon the extent and value of property held by them for public purposes where such bodies possess power to impose and collect taxes. If the taxing power is unlimited, then while the taxable property is in excess of the amount of its indebtedness insolvency, in fact, cannot exist. If the taxing power is limited, as frequently in the case of a County or city, by statute law, and of the State by its Constitution, then the insufficiency of the taxing power must be referred to a public policy limiting it, and not to anything in the nature or the condition of its means significant of a state of insolvency.

It follows that the return of an execution unsatisfied against a political body subject to such process does not afford even presumptive evidence of insolvency. Thus the whole foundation of the creditor's bill is gone in its application to political bodies of the nature that we have described.

It is not necessary, at the present time, to point out the remedies that are under the control of parties holding ordinary process on a judgment or decree against such bodies other than the State.

We considered, in *Morton* vs. *Hoge*, (4 S. C., 430,) the nature of the remedy by *mandamus* as a means of enforcing the provisions of law looking to the payment of public debts by the exercise of the taxing power. In *Jacobs* vs. *Winnsboro Bank* and in *State* vs. *Smith*, we considered the application of that writ to compel public officers, under a specific obligation to apply public moneys to the payment of public debts, to perform such duties. Neither authority or principle warrant us in the addition to the list of remedies available against public political bodies, such as the State, County or lesser municipality, the creditor's bill.

The plaintiff attempts to support his right of action by affirming that the County Commissioners are trustees for the creditors he assumes to represent. It will not be necessary to deny that their public duties are in the nature of a trust. The public body which they represent and for which they act is entitled to the beneficial enjoyment of the public powers and public property held under the title to their offices. They are clearly not trustees for the creditors of the public body. The trust involved in a public office is not an ordinary trust or specially cognizable as such in equity. It is a trust of a very special character, coupled with a discretion more or less limited by law. That discretion is a political function and is inseparable from the trust. A Court of equity could not exercise that discretion, for the reason that it is a political function, nor can it assume the administration of the public trust without assuming also the exercise of such discretion which is inseparable from it; consequently it will not interfere, unless, as in the case of *Auditor* vs. *Treasurer*, (4 S. C., 311,) such public officer has misapplied public funds or seeks to misapply them, in which case the Court interferes only to the extent of preventing the public property from being diverted from the uses to which it is dedicated by law.—(Same case, p. 313.)

The present case being against the County Commissioners alone, their power to audit and make drafts on the County Treasurer is the proper subject matter of the present controversy.

The County Commissioners have no direct control over the funds in the County treasury.— *County Commissioners* vs. *Winnsboro National Bank,* (*ante* p. 73.)

Their powers are purely political, and their discretion such as the law of their office casts upon them. It is not competent for the Courts to take to themselves the administration of discretion of that class, for the same reasons that preclude them from performing administrative duties connected with the disbursement of public moneys, as has been already said.

The order of the Circuit Court should be set aside and the complaint dismissed without costs.

*Moses,* C. J., and *Wright,* A. J., concurred.